UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

Prager Metis CPAs, LLC,

Defendant.

Civil Action No. 24-CV-7025

**[PROPOSED] FINAL JUDGMENT AS TO DEFENDANT PRAGER METIS CPAS LLC**

The Securities and Exchange Commission having filed a Complaint and Defendant
Prager Metis CPAs, LLC ("Prager Metis") having entered a general appearance; consented to the
Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of
this Final Judgment without admitting or denying the allegations of the Complaint (except as to
jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal
from this Final Judgment:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant is
permanently restrained and enjoined from violating Sections 17(a)(2) and (3) of the Securities
Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77q(a)(2), (3)] in the offer or sale of any
security by the use of any means or instruments of transportation or communication in interstate
commerce or by use of the mails, directly or indirectly:

(a)     to obtain money or property by means of any untrue statement of a material fact
        or any omission of a material fact necessary in order to make the statements

made, in light of the circumstances under which they were made, not misleading;
or

(b)     to engage in any transaction, practice, or course of business which operates or
would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, as provided in
Federal Rule of Civil Procedure 65(d)(2), the foregoing paragraph also binds the following who
receive actual notice of this Final Judgment by personal service or otherwise:  (i) Defendant's
officers, agents, servants, employees, and attorneys; and (ii) other persons in active concert or
participation with Defendant or with anyone described in (i).

II.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall pay a
civil penalty in the amount of $745,000 to the Securities and Exchange Commission pursuant to
Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)].  Defendant shall make this payment
within 30 days after entry of this Final Judgment.

Defendant may transmit payment electronically to the Commission, which will provide
detailed ACH transfer/Fedwire instructions upon request.  Payment may also be made directly
from a bank account via Pay.gov through the SEC website at
http://www.sec.gov/about/offices/ofm.htm.  Defendant may also pay by certified check, bank
cashier's check, or United States postal money order payable to the Securities and Exchange
Commission, which shall be delivered or mailed to

Enterprise Services Center
Accounts Receivable Branch
6500 South MacArthur Boulevard
Oklahoma City, OK 73169

and shall be accompanied by a letter identifying the case title, civil action number, and name of

this Court; Prager Metis CPAs LLC as a defendant in this action; and specifying that payment is made pursuant to this Final Judgment.

Defendant shall simultaneously transmit photocopies of evidence of payment and case identifying information to the Commission's counsel in this action. By making this payment, Defendant relinquishes all legal and equitable right, title, and interest in such funds and no part of the funds shall be returned to Defendant. The Commission shall send the funds paid pursuant to this Final Judgment to the United States Treasury.

The Commission may enforce the Court's judgment for penalties by the use of all collection procedures authorized by law, including the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001 *et seq.,* and moving for civil contempt for the violation of any Court orders issued in this action. Defendant shall pay post-judgment interest on any amounts due after 30 days of the entry of this Final Judgment pursuant to 28 USC § 1961.

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent of Defendant Prager Metis CPAs, LLC is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein, including, but not limited to, the undertakings to:

A.     <u>Independent Consultant</u>

1.     Retain, within sixty (60) days after the entry of this Order, an independent consultant ("Independent Consultant"), not unacceptable to the Commission Staff in the Division of Enforcement ("Commission Staff"). Prager Metis shall provide the Commission Staff with notice of possible Independent Consultant candidates no later than thirty (30) days following the entry of this Order. The Commission Staff shall have ten (10) business days to communicate

whether the Independent Consultant candidates are not unacceptable to the Commission Staff. Prager Metis shall, upon request by the Commission Staff, provide information about the Independent Consultant's work plan to the Commission Staff including the Independent Consultant's experience, ability to staff the engagement, and expertise in auditing and audit firm quality controls.  Prager Metis shall provide to the Commission Staff a copy of the engagement letter detailing the scope of the Independent Consultant's responsibilities within three (3) months after the entry of this Order.  If requested by Commission Staff, Prager Metis shall make the Independent Consultant available to Commission Staff to make presentations, provide updates, and explain the work, progress, and conclusions.  The Independent Consultant shall have the authority to employ legal counsel, consultants, investigators, experts, and other personnel necessary to assist in the proper discharge of the Independent Consultant's duties. The Independent Consultant's compensation and reasonable expenses shall be borne exclusively by Prager Metis.

2.      To ensure the independence of the Independent Consultant, Prager Metis:  shall not have the authority to terminate the Independent Consultant or substitute another independent consultant for the initial Independent Consultant, without the prior written approval of the Commission Staff; and shall compensate the Independent Consultant and persons engaged to assist the Independent Consultant for services rendered pursuant to this Order at their reasonable and customary rates.

3.      Prager Metis will require the Independent Consultant to enter into an agreement that provides that, for the period of engagement and for a period of two (2) years after the issuance of the Independent's Consultant's final report (as defined in Paragraph III.11), the Independent Consultant shall not enter into any employment, consultant, attorney-client, auditing

or other professional relationship with Prager Metis, or any of its present or former affiliates, directors, officers, partners, employees, or agents acting in their capacity as such. The agreement will also provide that the Independent Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Independent Consultant in the performance of his/her duties under this Order shall not, without prior written consent of the Commission Staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Prager Metis, or any of its present or former affiliates, directors, officers, partners, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two (2) years after the issuance of the Independent Consultant's final report (as defined by Paragraph III.11).

4.      With respect to Commission Staff, Prager Metis will not assert any legal privilege over communications with or work product prepared by the Independent Consultant.

B.      Scope of Independent Consultant's Review

5.      Within the time periods specified below, the Independent Consultant will review and evaluate Prager Metis's audit, review, and quality control policies and procedures—as to, among other aspects, their sufficiency, adequacy, design, implementation, operation, and effectiveness—applicable to Audit Clients[1] regarding the subjects set forth below. The Independent Consultant's purpose for this review and evaluation will be to make recommendations for improvements to policies and procedures consistent with applicable professional guidance and standards that:

a.   Provide reasonable assurance that personnel comply with applicable professional standards and the firm's standards of quality including:

---

[1] An "Audit Client," for purposes of these undertakings, means any client of Prager Metis that is an SEC registrant or any client for which the audit or review services was required by the federal securities laws.

i.   That due care, professional judgment, and professional skepticism are exercised in the planning and performance of the audit and the preparation of the report;

ii.  That engagement partners are properly supervising the work of engagement team members for compliance with applicable professional standards, including reviewing the work of engagement team members to evaluate whether the work was appropriately performed and documented and that the results of the work support the conclusions reached;

iii. That auditors are obtaining an understanding of the entity being audited and its environment, including (a) relevant industry, regulatory, and other external factors, including the applicable financial reporting framework; (b) the nature of the entity, its operations, and its ownership and governance structures; and (c) the entity's internal control;

iv.  That auditors are identifying and assessing the risks of material misstatements in the financial statements, including by identifying which risks are significant by considering at least (a) whether the risk is a risk of fraud; (b) whether the risk is related to recent significant economic, accounting, or other developments; (c) the complexity of transactions; and (d) whether the risk involves significant transactions with related parties;

v.   That auditors are developing and modifying, as necessary, an audit plan that includes, among other things, the nature and extent of planned risk assessment procedures;

vi.   That auditors are planning and performing audit procedures that identify, assess, and respond to risks of material misstatement, including but not limited to those arising from the entity's failure to appropriately account for or disclose related party relationships, transactions, or balances, understanding that the nature of related party relationships and transactions may, in some circumstances, give rise to higher risks of material misstatement of the financial statements than transactions with unrelated parties;

vii.   That auditors are documenting the procedures performed, evidence obtained, and conclusions reached, and that audit documentation contains sufficient information for an experienced auditor, having no previous connection with the engagement to (a) understand the nature, timing, extent, and results of the procedures performed to comply with applicable professional standards; the results of the audit procedures performed, and the audit evidence obtained; and significant findings or issues arising during the audit, the conclusions reached thereon, and significant professional judgments made in reaching those conclusions, and (b) to determine who performed the work and the date such work was completed, as well as the person who reviewed the work and the date of such review;

viii.   That a complete and final set of audit documentation is assembled for retention as of a date not more than 45 days after the report release date ("documentation completion date") and that documentation requirements are also met for unfinished or incomplete engagements;

ix.   That audit documentation is not deleted or discarded after the documentation completion date before the end of a specified retention period and that any information and documentation added after the documentation completion date indicates the date the information was added, the name of the person who prepared the additional documentation, and the reason for adding it;

x.   That the firm follows its standards of quality and applicable professional standards with respect to the selection of engagement quality control reviewers;

xi.   That engagement quality reviewers and others who assist the reviewer should not make decisions on behalf of the engagement team or assume any of the responsibilities of the engagement team;

xii.   That engagement quality review should contain sufficient information to enable an experienced auditor, having no previous connection with the engagement, to understand the procedures performed by the engagement quality reviewer, and others who assisted the reviewer, to comply with the provisions of this standard, including information that identifies: (a) the documents reviewed by the engagement quality reviewer, and others who assisted the reviewer, and (b) the date the

engagement quality reviewer provided concurring approval of issuance or, if no concurring approval of issuance was provided, the reasons for not providing the approval; and

xiii.  That engagement quality review should perform an objective evaluation of the significant judgments made by the engagement team and the conclusions reached in formulating the auditor's report, including (a) discussion of significant findings or issues with the engagement; (b) reading the financial statements and the proposed auditor's report; (c) review of selected audit documentation relating to the significant judgments the engagement team made and the related conclusions it reached; and (d) evaluation of the conclusions reached in formulating the auditor's report and consideration of whether the proposed auditor's report is appropriate.

b.  Provide the firm with reasonable assurance that the firm's policies and procedures concerning quality control standards are suitably designed pursuant to applicable professional standards and are being effectively applied and monitored.

c.  Provide the firm with reasonable assurance that the firm is properly undertaking or continuing client relationships and engagements only when the firm is competent to perform the engagement and has the capabilities, including time and resources, to do so.

d.  Provide the firm with reasonable assurance that the firm is assigning appropriate personnel, including engagement partners, with the necessary

competence and capabilities to perform engagements in accordance with

professional standards and applicable legal and regulatory requirements, to

engagement teams.

e.  Provide the firm with reasonable assurance that the firm has a monitoring

process concerning whether the policies and procedures relating to its system

of quality control are relevant, adequate, and operating effectively.

f.  Provide the firm with reasonable assurance that its public audit practice leader

is appropriate to lead that practice, including whether he has a proven ability

to follow firm standards of quality and applicable professional standards.

g.  Provide the firm with reasonable assurance that the firm's policies and

procedures relating to auditor independence are suitably designed pursuant to

applicable professional standards and are being effectively applied.

6.     Prager Metis shall cooperate fully with the Independent Consultant and shall

provide reasonable and timely access to any Prager Metis partner, employee, agent, or

consultant, and to any information and records (including audit and consultation documents), as

the Independent Consultant may reasonably request for the Independent Consultant's review and

evaluation described in Paragraph III.5 above and the reports specified in Paragraphs III.7

through III.12 below.

    C.     Independent Consultant Reports and Certifications

7.     Within eight (8) months after the entry of this Order, Prager Metis shall require

the Independent Consultant to issue a detailed written report ("**Initial Report**") to Prager Metis:

(i) describing the Independent Consultant's review and evaluation of each of the areas identified

in Paragraph III.5. and its subsections above; and (ii) making recommendations, where

appropriate, reasonably designed to ensure that audits conducted by Prager Metis comply with applicable professional standards and any applicable federal securities laws. Prager Metis shall require the Independent Consultant to provide a copy of the Initial Report to the Commission Staff when the Initial Report is issued. Prager Metis shall also make the Independent Consultant available to Commission Staff to discuss its work both periodically and after issuance of the Initial Report.

8.      Prager Metis will adopt and implement, as soon as practicably possible, but in any event no later than two (2) years after the entry of this Order, and in compliance with the requirements set forth in Paragraphs III.10 through III.15 below, all recommendations of the Independent Consultant in the Initial Report. Provided, however, that within thirty (30) days of issuance of the Initial Report, Prager Metis may advise the Independent Consultant in writing of any recommendation that it considers to be unnecessary, unjust, outside the scope of this Order, unduly burdensome, or impractical. Prager Metis need not adopt any such unnecessary, unjust, outside the scope of this Order, unduly burdensome, or impractical recommendation at that time, but instead may propose in writing to the Independent Consultant an alternative recommendation (an "Alternative Recommendation") designed to achieve the same objective or purpose. Prager Metis will provide any such Alternative Recommendation(s) to the Commission Staff at the same time that Prager Metis submits such Alternative Recommendation(s) to the Independent Consultant. Prager Metis and the Independent Consultant shall engage in good faith negotiations in an effort to reach agreement on any recommendations objected to by Prager Metis.

9.      In the event that the Independent Consultant and Prager Metis are unable to agree on any Alternative Recommendation(s) within sixty (60) days of the issuance of the Initial Report, Prager Metis shall abide by the determinations of the Independent Consultant.

10.     Within sixty (60) days of issuance of the Initial Report, Prager Metis will certify to the Commission Staff in writing that (i) Prager Metis has adopted and has implemented or will implement all recommendations of the Independent Consultant; and (ii) the Independent Consultant agrees that Prager Metis has adopted, implemented, and/or has a plan for implementation (the "**Certification of Agreement to Adopt Recommendations**").  Prager Metis will provide a copy of the Certification of Agreement to Adopt Recommendations to the Commission Staff.  To the extent that Prager Metis has not implemented all recommendations contained in the Initial Report by that time, Prager Metis will certify to the Commission Staff in writing, no later than thirty (30) days after their implementation, that (i) Prager Metis has adopted and has implemented all recommendations contained in the Initial Report; and (ii) the Independent Consultant agrees that the recommendations have been adequately adopted and implemented by Prager Metis ("**Implementation Certification**").

11.     Within six (6) months of the issuance of the Initial Report or the Implementation Certification, whichever is later, Prager Metis shall require the Independent Consultant to complete testing to assess (i) whether Prager Metis has implemented the written policies and procedures concerning the areas specified in Paragraph III.5 and its subsections above and (ii) the effectiveness of the design and implementation of those policies and procedures.  At least thirty (30) days prior to beginning the testing, Prager Metis shall provide to the Commission Staff a copy of the scope and parameters for testing.  The Commission Staff shall have ten (10) days to provide comments.  Within thirty (30) days of the completion of this testing, Prager Metis shall require the Independent Consultant to issue a written report summarizing the results of the Independent Consultant's testing and assessment, and if applicable, any recommendations ("**Final Report**") and to provide a copy of the Final Report to the Commission Staff.  At this

time, if the Independent Consultant determines that Prager Metis has adopted and implemented all recommendations set forth in the Initial Report and that Prager Metis's quality control policies addressing those recommendations and the policies specified in Paragraph III.5 and its subsections are functioning effectively, Prager Metis shall require the Independent Consultant to certify in writing that Prager Metis has satisfied such undertakings ("**Independent Consultant Certification**") and provide a copy of this certification to the Commission Staff.  In all events, Prager Metis must complete all undertakings concerning the implementation of the recommendations set forth in the Independent Consultant's Initial Report, and any amended recommendations, and provide the Independent Consultant Certification to the Commission Staff no later than two (2) years after the entry of this Order.

12.    To the extent that the Final Report has additional recommendations that Prager Metis has not implemented, within thirty (30) days of issuance of the Final Report, Prager Metis will certify to the Commission Staff in writing that it has adopted and has implemented or will implement all additional recommendations of the Independent Consultant ("**Final Certification of Agreement to Adopt Recommendations**").  Prager Metis will provide a copy of the Final Certification of Agreement to Adopt Recommendations to the Commission Staff.  To the extent that Prager Metis has not implemented all additional recommendations contained in the Final Report by that time, Prager Metis will certify to the Commission Staff in writing, by thirty (30) days after their implementation, that Prager Metis has adopted and has implemented all recommendations contained in the Final Report ("**Final Implementation Certification**").  In all events, Prager Metis must complete all undertakings concerning the implementation of the recommendations set forth in the Independent Consultant's Final Report no later than four (4) months after the issuance of the Final Report.

13

13.     The Initial Report, Final Report, Certification of Agreement to Adopt Recommendations, Implementation Certification, Independent Consultant Certification, Final Certification of Agreement to Adopt Recommendations, and Final Implementation Certification, and any related correspondence or other documents shall be submitted to Michael Brennan, Assistant Director, Division of Enforcement, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549; and Amy Flaherty Hartman, Assistant Regional Director, Division of Enforcement, Securities and Exchange Commission, Chicago Regional Office, 175 W. Jackson Blvd, Suite 1450, Chicago, IL 60604; with a copy to the Office of Chief Counsel of the Enforcement Division, 100 F Street NE, Washington DC, 20549.

14.     The Initial Report and Final Report by the Independent Consultant will likely include confidential financial, proprietary, competitive business or commercial information. Public disclosure of these reports could discourage cooperation, impede pending or potential government investigations or undermine the objectives of the reporting requirement.  For these reasons, among others, these reports and the contents thereof are intended to remain and shall remain non-public, except (i) pursuant to court order, (ii) as agreed to by the parties in writing, (iii) to the extent that the Commission determines in its sole discretion that disclosure would be in furtherance of the Commission's discharge of its duties and responsibilities, or (iv) is otherwise required by law.

15.     No later than sixty (60) days from the date that Prager Metis signs the Final Implementation Certification, Prager Metis's Global Managing Partner and Prager Metis's leader of quality control policies and procedures shall both certify, in writing, compliance with the undertakings set forth above.  The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to

demonstrate compliance.  The Commission Staff may make reasonable requests for further evidence of compliance, and Prager Metis agrees to provide such evidence.  This certification and supporting material shall be submitted to the individuals identified in Paragraph III.13 no later than sixty (60) days from the date of the completion of the undertakings.

16.     For good cause shown, and solely at the discretion of the Commission Staff, the Commission Staff may extend any of the procedural dates relating to the undertakings. Deadlines for procedural dates shall be counted in calendar days, except that if the last day falls on a weekend or federal holiday, the next business day shall be considered to be the last day.

17.     If the Commission Staff believes that Prager Metis has not satisfied these undertakings, the Commission Staff may petition the Commission to reopen the matter to determine whether additional sanctions are appropriate.

   D.     <u>Acceptance of New Audit Clients</u>

18.     Between the date of entry of this Order and the date on which Prager Metis provides a copy of the Certification of Agreement to Adopt Recommendations to the Commission Staff, and pursuant to the Independent Consultant's review and approval as provided in Paragraph III.19.a, Prager Metis shall accept no more than one (1) new audit client ("New Audit Client") per quarter.[2]  Quarters shall be calculated starting with the date of entry of this Order, running in ninety (90) day increments thereafter. To the extent Prager Metis accepts fewer New Audit Clients than the maximum allowable within a quarter, the number of allowable New Audit Clients will "rollover" into subsequent quarters. The Independent Consultant shall report to the Commission Staff on a quarterly basis the New Audit Clients Prager Metis has

---

[2] A New Audit Client is defined as an entity seeking audit services from Prager Metis that is (a) an issuer, as that term is defined in Section 2(a)(7) of the Sarbanes-Oxley Act of 2002; or (b) is seeking audit services for the purpose of registering securities with the Commission.

accepted and will confirm that the Independent Consultant has approved acceptance of such New Audit Clients pursuant to the New Audit Client Protocol described in Paragraph III.19.a.

19.    Between the date of the entry of this Order and the date on which Prager Metis provides a copy of the Implementation Certification to the Commission Staff, the Independent Consultant shall review and approve any New Audit Clients, pursuant to the following:

   a.    Prager Metis shall provide the Independent Consultant a minimum of sixty (60) days to prepare a written protocol for reviewing and approving the New Audit Clients ("New Audit Client Protocol"). The sixty (60) day period shall commence on the date upon which the Independent Consultant is formally retained by Prager Metis. Prager Metis shall require the Independent Consultant to provide a copy of the New Audit Client Protocol to the Commission Staff. The Commission Staff shall have ten (10) business days to communicate whether the New Audit Client Protocol is not unacceptable to the Commission Staff. The New Audit Client Protocol shall outline, at a sufficient level of detail, procedures to be performed in connection with the review of any prospective New Audit Client, including documents and information to be requested and reviewed, factors to be analyzed, and discussions, meetings, or interviews to be held, as needed. The New Audit Client Protocol shall also outline documentation to be created, in connection with the review of any prospective New Audit Client, which documentation shall memorialize, at a sufficient level of detail, procedures performed and conclusions reached in connection with the review of any prospective New Audit Client (the "New Audit Client Acceptance Documentation"). The New Audit Client Protocol shall also take into consideration the following factors:

i.   whether as of the date the proposed new engagement is considered, Prager
     Metis's policies, procedures, and quality control system, as known or
     observed by the Independent Consultant at the time of acceptance, are
     sufficient for Prager Metis to conduct the engagement in accordance with
     all applicable professional standards;

ii.  whether the proposed engagement partner, engagement quality reviewer
     ("EQR"), and engagement team members at the level of manager and
     above possess the requisite competence, experience, and technical
     proficiency to conduct the engagement in accordance with PCAOB
     auditing standards;

iii. whether the proposed engagement partner, EQR, and engagement team
     members have sufficient capacity to complete their respective
     responsibilities within the requisite time frame and with professional
     competence and in accordance with all applicable professional standards;
     and

iv.  whether the staffing resources proposed to be dedicated to the engagement
     are sufficient to conduct the engagement in accordance with applicable
     professional standards.

b.  Prager Metis shall require the Independent Consultant to apply the New Audit
    Client Protocol to assess and approve any New Audit Clients. New Audit Client
    Acceptance Documentation must be completed, in a sufficient level of detail, in
    connection with the review of any prospective New Audit Client; such
    documentation must also be sufficient to reflect the date upon which the New

Audit Client Protocol procedures were performed, and that such procedures were performed prior to any formal acceptance of the New Audit Client by Prager Metis. In the event the Independent Consultant does not approve the acceptance of a New Audit Client, Prager Metis shall not accept the client.

c.  Prager Metis shall maintain all New Audit Client Acceptance Documentation for a period of seven (7) years, regardless of whether a New Audit Client was accepted, and shall make such documentation available to Commission Staff upon request, within five (5) business days of any such request.

E.  <u>Other Matters</u>

20.    Prager Metis shall require each audit professional to undergo training, as applicable, related to the areas specified in Paragraph III.5 and its subsections above.

21.    Prager Metis shall certify, in writing, compliance with the undertakings set forth above.  The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Defendant agrees to provide such evidence.  Defendant shall submit the certification and supporting material to the individuals identified in Paragraph III.13 no later than sixty (60) days from the date of the completion of the undertakings.

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

Dated: _____, 2024

_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

Prager Metis CPAs, LLC,

Defendant.

C.A. No. __-____ (   )

**CONSENT OF DEFENDANT PRAGER METIS CPAS LLC**

1.     Defendant Prager Metis CPAs, LLC ("Defendant" or "Prager Metis") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.     Without admitting or denying the allegations of the complaint (except as provided herein in Paragraph 32 and except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

      a.     permanently restrains and enjoins Defendant from violation of Sections 17(a)(2) and (a)(3) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§ 77q(a)(2) and (a)(3)] as set forth in the Final Judgment;

      b.     orders Defendant to pay a civil penalty in the amount of $745,000 under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)]; and

      c.     comply with the undertakings set forth herein and in the Final Judgment.

3.      Defendant agrees that it shall not seek or accept, directly or indirectly,

reimbursement or indemnification from any source, including but not limited to payment made

pursuant to any insurance policy, with regard to any civil penalty amounts that Defendant pays

pursuant to the Final Judgment, regardless of whether such penalty amounts or any part thereof

are added to a distribution fund or otherwise used for the benefit of investors. Defendant further

agrees that it shall not claim, assert, or apply for a tax deduction or tax credit with regard to any

federal, state, or local tax for any penalty amounts that Defendant pays pursuant to the Final

Judgment, regardless of whether such penalty amounts or any part thereof are added to a

distribution fund or otherwise used for the benefit of investors.

A.      Independent Consultant

4.      Defendant undertakes to Retain, within sixty (60) days after the entry of this

Order, an independent consultant ("Independent Consultant"), not unacceptable to the

Commission Staff in the Division of Enforcement ("Commission Staff"). Prager shall provide

the Commission Staff with notice of possible Independent Consultant candidates no later than

thirty (30) days following the entry of this Order. The Commission Staff shall have ten (10)

business days to communicate whether the Independent Consultant candidates are not

unacceptable to the Commission Staff. Prager Metis shall, upon request by the Commission

Staff, provide information about the Independent Consultant's work plan to the Commission

Staff including the Independent Consultant's experience, ability to staff the engagement, and

expertise in auditing and audit firm quality controls. Prager Metis shall provide to the

Commission Staff a copy of the engagement letter detailing the scope of the Independent

Consultant's responsibilities within three (3) months after the entry of this Order. If requested by

Commission Staff, Prager Metis shall make the Independent Consultant available to Commission

Staff to make presentations, provide updates, and explain the work, progress, and conclusions. The Independent Consultant shall have the authority to employ legal counsel, consultants, investigators, experts, and other personnel necessary to assist in the proper discharge of the Independent Consultant's duties. The Independent Consultant's compensation and reasonable expenses shall be borne exclusively by Prager Metis.

5.      To ensure the independence of the Independent Consultant, Prager Metis: shall not have the authority to terminate the Independent Consultant or substitute another independent consultant for the initial Independent Consultant, without the prior written approval of the Commission Staff; and shall compensate the Independent Consultant and persons engaged to assist the Independent Consultant for services rendered pursuant to this Order at their reasonable and customary rates.

6.      Prager Metis will require the Independent Consultant to enter into an agreement that provides that, for the period of engagement and for a period of two (2) years after the issuance of the Independent's Consultant's final report (as defined in Paragraph 14), the Independent Consultant shall not enter into any employment, consultant, attorney-client, auditing or other professional relationship with Prager Metis, or any of its present or former affiliates, directors, officers, partners, employees, or agents acting in their capacity as such. The agreement will also provide that the Independent Consultant will require that any firm with which he/she is affiliated or of which he/she is a member, and any person engaged to assist the Independent Consultant in the performance of his/her duties under this Order shall not, without prior written consent of the Commission Staff, enter into any employment, consultant, attorney-client, auditing or other professional relationship with Prager Metis, or any of its present or former affiliates, directors, officers, partners, employees, or agents acting in their capacity as such for

the period of the engagement and for a period of two (2) years after the issuance of the

Independent Consultant's final report (as defined by Paragraph 14).

7.    With respect to Commission Staff, Prager Metis will not assert any legal privilege

over communications with or work product prepared by the Independent Consultant.

B.    <u>Scope of Independent Consultant's Review</u>

8.    Within the time periods specified below, the Independent Consultant will review

and evaluate Prager Metis's audit, review, and quality control policies and procedures—as to,

among other aspects, their sufficiency, adequacy, design, implementation, operation, and

effectiveness—applicable to Audit Clients[1] regarding the subjects set forth below. The

Independent Consultant's purpose for this review and evaluation will be to make

recommendations for improvements to policies and procedures consistent with applicable

professional guidance and standards that:

    a.    Provide reasonable assurance that personnel comply with applicable

        professional standards and the firm's standards of quality including:

        i.    That due care, professional judgment, and professional skepticism are

            exercised in the planning and performance of the audit and the

            preparation of the report;

        ii.    That engagement partners are properly supervising the work of

            engagement team members for compliance with applicable

            professional standards, including reviewing the work of engagement

            team members to evaluate whether the work was appropriately

---

[1] An "Audit Client," for purposes of these undertakings, means any client of Prager Metis that is an SEC registrant or any client for which the audit or review services is required by the federal securities laws.

performed and documented and that the results of the work support the
conclusions reached;

iii. That auditors are obtaining an understanding of the entity being
audited and its environment, including (a) relevant industry,
regulatory, and other external factors, including the applicable
financial reporting framework; (b) the nature of the entity, its
operations, and its ownership and governance structures; and (c) the
entity's internal control;

iv. That auditors are identifying and assessing the risks of material
misstatements in the financial statements, including by identifying
which risks are significant by considering at least (a) whether the risk
is a risk of fraud; (b) whether the risk is related to recent significant
economic, accounting, or other developments; (c) the complexity of
transactions; and (d) whether the risk involves significant transactions
with related parties;

v. That auditors are developing and modifying, as necessary, an audit
plan that includes, among other things, the nature and extent of
planned risk assessment procedures;

vi. That auditors are planning and performing audit procedures that
identify, assess, and respond to risks of material misstatement,
including but not limited to those arising from the entity's failure to
appropriately account for or disclose related party relationships,
transactions, or balances, understanding that the nature of related party

5

relationships and transactions may, in some circumstances, give rise to higher risks of material misstatement of the financial statements than transactions with unrelated parties;

vii. That auditors are documenting the procedures performed, evidence obtained, and conclusions reached, and that audit documentation contains sufficient information for an experienced auditor, having no previous connection with the engagement to (a) understand the nature, timing, extent, and results of the procedures performed to comply with applicable professional standards; the results of the audit procedures performed, and the audit evidence obtained; and significant findings or issues arising during the audit, the conclusions reached thereon, and significant professional judgments made in reaching those conclusions, and (b) to determine who performed the work and the date such work was completed, as well as the person who reviewed the work and the date of such review;

viii. That a complete and final set of audit documentation is assembled for retention as of a date not more than 45 days after the report release date ("documentation completion date") and that documentation requirements are also met for unfinished or incomplete engagements;

ix. That audit documentation is not deleted or discarded after the documentation completion date before the end of a specified retention period and that any information and documentation added after the documentation completion date indicates the date the information was

added, the name of the person who prepared the additional

documentation, and the reason for adding it;

x.  That the firm follows its standards of quality and applicable

professional standards with respect to the selection of engagement

quality control reviewers;

xi.  That engagement quality reviewers and others who assist the reviewer

should not make decisions on behalf of the engagement team or

assume any of the responsibilities of the engagement team;

xii.  That engagement quality review should contain sufficient information

to enable an experienced auditor, having no previous connection with

the engagement, to understand the procedures performed by the

engagement quality reviewer, and others who assisted the reviewer, to

comply with the provisions of this standard, including information that

identifies (a) the documents reviewed by the engagement quality

reviewer, and others who assisted the reviewer, and (b) the date the

engagement quality reviewer provided concurring approval of issuance

or, if no concurring approval of issuance was provided, the reasons for

not providing the approval; and

xiii.  That engagement quality review should perform an objective

evaluation of the significant judgments made by the engagement team

and the conclusions reached in formulating the auditor's report,

including (a) discussion of significant findings or issues with the

engagement; (b) reading the financial statements and the proposed

auditor's report; (c) review of selected audit documentation relating to the significant judgments the engagement team made and the related conclusions it reached; and (d) evaluation of the conclusions reached in formulating the auditor's report and consideration of whether the proposed auditor's report is appropriate.

b.  Provide the firm with reasonable assurance that the firm's policies and procedures concerning quality control standards are suitably designed pursuant to applicable professional standards and are being effectively applied and monitored.

c.  Provide the firm with reasonable assurance that the firm is properly undertaking or continuing client relationships and engagements only when the firm is competent to perform the engagement and has the capabilities, including time and resources, to do so.

d.  Provide the firm with reasonable assurance that the firm is assigning appropriate personnel, including engagement partners, with the necessary competence and capabilities to perform engagements in accordance with professional standards and applicable legal and regulatory requirements, to engagement teams.

e.  Provide the firm with reasonable assurance that the firm has a monitoring process concerning whether the policies and procedures relating to its system of quality control are relevant, adequate, and operating effectively.

    f.   Provide the firm with reasonable assurance that its public audit practice leader is appropriate to lead that practice, including whether he has a proven ability to follow firm standards of quality and applicable professional standards.

    g.   Provide the firm with reasonable assurance that the firm's policies and procedures relating to auditor independence are suitably designed pursuant to applicable professional standards and are being effectively applied.

9.    Prager shall cooperate fully with the Independent Consultant and shall provide reasonable and timely access to any Prager Metis partner, employee, agent, or consultant, and to any information and records (including audit and consultation documents), as the Independent Consultant may reasonably request for the Independent Consultant's review and evaluation described in Paragraph 8 above and the reports specified in Paragraphs 10 through 15 below.

    C.    <u>Independent Consultant Reports and Certifications</u>

10.    Within eight (8) months after the entry of this Order, Prager Metis shall require the Independent Consultant to issue a detailed written report ("**Initial Report**") to Prager Metis: (i) describing the Independent Consultant's review and evaluation of each of the areas identified in Paragraph 8 and its subsections above; and (ii) making recommendations, where appropriate, reasonably designed to ensure that audits conducted by Prager Metis comply with applicable professional standards and any applicable federal securities laws. Prager Metis shall require the Independent Consultant to provide a copy of the Initial Report to the Commission Staff when the Initial Report is issued. Prager Metis shall also make the Independent Consultant available to Commission Staff to discuss its work both periodically and after issuance of the Initial Report.

11.    Prager Metis will adopt and implement, as soon as practicably possible, but in any event no later than two (2) years after the entry of this Order, and in compliance with the

9

requirements set forth in Paragraphs 13-18 below, all recommendations of the Independent

Consultant in the Initial Report. Provided, however, that within thirty (30) days of issuance of the

Initial Report, Prager Metis may advise the Independent Consultant in writing of any

recommendation that it considers to be unnecessary, unjust, outside the scope of this Order,

unduly burdensome, or impractical. Prager Metis need not adopt any such unnecessary, unjust,

outside the scope of this Order, unduly burdensome, or impractical recommendation at that time,

but instead may propose in writing to the Independent Consultant an alternative recommendation

(an "Alternative Recommendation") designed to achieve the same objective or purpose. Prager

Metis will provide any such Alternative Recommendation(s) to the Commission Staff at the

same time that Prager Metis submits such Alternative Recommendation(s) to the Independent

Consultant. Prager Metis and the Independent Consultant shall engage in good faith negotiations

in an effort to reach agreement on any recommendations objected to by Prager Metis.

12.    In the event that the Independent Consultant and Prager Metis are unable to agree

on any Alternative Recommendation(s) within sixty (60) days of the issuance of the Initial

Report, Prager Metis shall abide by the determinations of the Independent Consultant.

13.    Within sixty (60) days of issuance of the Initial Report, Prager Metis will certify

to the Commission Staff in writing that (i) Prager Metis has adopted and has implemented or will

implement all recommendations of the Independent Consultant; and (ii) the Independent

Consultant agrees that Prager Metis has adopted, implemented, and/or has a plan for

implementation (the "**Certification of Agreement to Adopt Recommendations**"). Prager Metis

will provide a copy of the Certification of Agreement to Adopt Recommendations to the

Commission Staff. To the extent that Prager Metis has not implemented all recommendations

contained in the Initial Report by that time, Prager Metis will certify to the Commission Staff in

writing, no later than thirty (30) days after their implementation, that (i) Prager Metis has adopted and has implemented all recommendations contained in the Initial Report; and (ii) the Independent Consultant agrees that the recommendations have been adequately adopted and implemented by Prager Metis ("**Implementation Certification**").

14.    Within six (6) months of the issuance of the Initial Report or the Implementation Certification, whichever is later, Prager Metis shall require the Independent Consultant to complete testing to assess (i) whether Prager Metis has implemented the written policies and procedures concerning the areas specified in Paragraph 8 and its subsections above and (ii) the effectiveness of the design and implementation of those policies and procedures. At least thirty (30) days prior to beginning the testing, Prager Metis shall provide to the Commission Staff a copy of the scope and parameters for testing. The Commission Staff shall have ten (10) days to provide comments. Within thirty (30) days of the completion of this testing, Prager Metis shall require the Independent Consultant to issue a written report summarizing the results of the Independent Consultant's testing and assessment, and if applicable, any recommendations ("**Final Report**") and to provide a copy of the Final Report to the Commission Staff. At this time, if the Independent Consultant determines that Prager Metis has adopted and implemented all recommendations set forth in the Initial Report and that Prager Metis's quality control policies addressing those recommendations and the policies specified in Paragraph 8 and its subsections are functioning effectively, Prager Metis shall require the Independent Consultant to certify in writing that Prager Metis has satisfied such undertakings ("**Independent Consultant Certification**") and provide a copy of this certification to the Commission Staff. In all events, Prager Metis must complete all undertakings concerning the implementation of the recommendations set forth in the Independent Consultant's Initial Report, and any amended

recommendations, and provide the Independent Consultant Certification to the Commission Staff no later than two (2) years after the entry of this Order.

15.    To the extent that the Final Report has additional recommendations that Prager Metis has not implemented, within thirty (30) days of issuance of the Final Report, Prager Metis will certify to the Commission Staff in writing that it has adopted and has implemented or will implement all additional recommendations of the Independent Consultant ("**Final Certification of Agreement to Adopt Recommendations**"). Prager Metis will provide a copy of the Final Certification of Agreement to Adopt Recommendations to the Commission Staff. To the extent that Prager Metis has not implemented all additional recommendations contained in the Final Report by that time, Prager Metis will certify to the Commission Staff in writing, by thirty (30) days after their implementation, that Prager Metis has adopted and has implemented all recommendations contained in the Final Report ("**Final Implementation Certification**"). In all events, Prager Metis must complete all undertakings concerning the implementation of the recommendations set forth in the Independent Consultant's Final Report no later than four (4) months after the issuance of the Final Report.

16.    The Initial Report, Final Report, Certification of Agreement to Adopt Recommendations, Implementation Certification, Independent Consultant Certification, Final Certification of Agreement to Adopt Recommendations, and Final Implementation Certification, and any related correspondence or other documents shall be submitted to Michael Brennan, Assistant Director, Division of Enforcement, Securities and Exchange Commission, 100 F Street NE, Washington, DC 20549; and Amy Flaherty Hartman, Assistant Regional Director, Division of Enforcement, Securities and Exchange Commission, Chicago Regional Office, 175 W.

Jackson Blvd, Suite 1450, Chicago, IL 60604; with a copy to the Office of Chief Counsel of the Enforcement Division, 100 F Street NE, Washington DC, 20549.

17.     The Initial Report and Final Report by the Independent Consultant will likely include confidential financial, proprietary, competitive business or commercial information. Public disclosure of these reports could discourage cooperation, impede pending or potential government investigations or undermine the objectives of the reporting requirement. For these reasons, among others, these reports and the contents thereof are intended to remain and shall remain non-public, except (1) pursuant to court order, (2) as agreed to by the parties in writing, (3) to the extent that the Commission determines in its sole discretion that disclosure would be in furtherance of the Commission's discharge of its duties and responsibilities, or (4) is otherwise required by law.

18.     No later than sixty (60) days from the date that Prager Metis signs the Final Implementation Certification, Prager Metis's Global Managing Partner and Prager Metis's leader of quality control policies and procedures shall both certify, in writing, compliance with the undertakings set forth above. The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission Staff may make reasonable requests for further evidence of compliance, and Prager Metis agrees to provide such evidence. This certification and supporting material shall be submitted to the individuals identified in Paragraph 16 no later than sixty (60) days from the date of the completion of the undertakings.

19.     For good cause shown, and solely at the discretion of the Commission Staff, the Commission Staff may extend any of the procedural dates relating to the undertakings. Deadlines

for procedural dates shall be counted in calendar days, except that if the last day falls on a weekend or federal holiday, the next business day shall be considered to be the last day.

20.    If the Commission Staff believes that Prager Metis has not satisfied these undertakings, the Commission Staff may petition the Commission to reopen the matter to determine whether additional sanctions are appropriate.

       D.    <u>Acceptance of New Audit Clients</u>

21.    Between the date of entry of this Order and the date on which Prager Metis provides a copy of the Certification of Agreement to Adopt Recommendations to the Commission Staff, and pursuant to the Independent Consultant's review and approval as provided in Paragraph 22, Prager Metis shall accept no more than one (1) new audit client ("New Audit Client") per quarter.[2]  Quarters shall be calculated starting with the date of entry of this Order, running in ninety (90) day increments thereafter. To the extent Prager Metis accepts fewer New Audit Clients than the maximum allowable within a quarter, the number of allowable New Audit Clients will "rollover" into subsequent quarters. The Independent Consultant shall report to the Commission Staff on a quarterly basis the New Audit Clients Prager Metis has accepted and will confirm that the Independent Consultant has approved acceptance of such New Audit Clients pursuant to the New Audit Client Protocol described in Paragraph 22.

22.    Between the date of the entry of this Order and the date on which Prager Metis provides a copy of the Implementation Certification to the Commission Staff, the Independent Consultant shall review and approve any New Audit Clients, pursuant to the following:

---

[2] A New Audit Client is defined as an entity seeking audit services from Prager Metis that is (a) an issuer, as that term is defined in Section 2(a)(7) of the Sarbanes-Oxley Act of 2002; or (b) is seeking audit services for the purpose of registering securities with the Commission.

14

a.  Prager Metis shall provide the Independent Consultant a minimum of sixty (60) days to prepare a written protocol for reviewing and approving the New Audit Clients ("New Audit Client Protocol"). The sixty (60) day period shall commence on the date upon which the Independent Consultant is formally retained by Prager Metis. Prager Metis shall require the Independent Consultant to provide a copy of the New Audit Client Protocol to the Commission Staff. The Commission Staff shall have ten (10) business days to communicate whether the New Audit Client Protocol is not unacceptable to the Commission Staff. The New Audit Client Protocol shall outline, at a sufficient level of detail, procedures to be performed in connection with the review of any prospective New Audit Client, including documents and information to be requested and reviewed, factors to be analyzed, and discussions, meetings, or interviews to be held, as needed. The New Audit Client Protocol shall also outline documentation to be created, in connection with the review of any prospective New Audit Client, which documentation shall memorialize, at a sufficient level of detail, procedures performed and conclusions reached in connection with the review of any prospective New Audit Client (the "New Audit Client Acceptance Documentation"). The New Audit Client Protocol shall also take into consideration the following factors:

i.  whether as of the date the proposed new engagement is considered, Prager Metis's policies, procedures, and quality control system, as known or observed by the Independent Consultant at the time of

acceptance, are sufficient for Prager Metis to conduct the engagement in accordance with all applicable professional standards;

ii.  whether the proposed engagement partner, engagement quality reviewer ("EQR"), and engagement team members at the level of manager and above possess the requisite competence, experience, and technical proficiency to conduct the engagement in accordance with PCAOB auditing standards;

iii.  whether the proposed engagement partner, EQR, and engagement team members have sufficient capacity to complete their respective responsibilities within the requisite time frame and with professional competence and in accordance with all applicable professional standards; and

iv.  whether the staffing resources proposed to be dedicated to the engagement are sufficient to conduct the engagement in accordance with applicable professional standards.

b.  Prager Metis shall require the Independent Consultant to apply the New Audit Client Protocol to assess and approve any New Audit Clients. New Audit Client Acceptance Documentation must be completed, in a sufficient level of detail, in connection with the review of any prospective New Audit Client; such documentation must also be sufficient to reflect the date upon which the New Audit Client Protocol procedures were performed, and that such procedures were performed prior to any formal acceptance of the New Audit Client by Prager Metis. In the event the Independent Consultant does not

16

approve the acceptance of a New Audit Client, Prager Metis shall not accept the client.

c.   Prager Metis shall maintain all New Audit Client Acceptance Documentation for a period of seven (7) years, regardless of whether a New Audit Client was accepted, and shall make such documentation available to Commission Staff upon request, within five (5) business days of any such request.

E.   Other Matters

23.   Prager Metis shall require each audit professional to undergo training, as applicable, related to the areas specified in Paragraph 8 and its subsections above.

24.   Prager Metis shall certify, in writing, compliance with the undertakings set forth above. The certification shall identify the undertakings, provide written evidence of compliance in the form of a narrative, and be supported by exhibits sufficient to demonstrate compliance. The Commission staff may make reasonable requests for further evidence of compliance, and Defendant agrees to provide such evidence. Defendant shall submit the certification and supporting material to the individuals identified in Paragraph 16 no later than sixty (60) days from the date of the completion of the undertakings.

25.   Defendant waives the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

26.   Defendant waives the right, if any, to a jury trial and to appeal from the entry of the Final Judgment.

27.   Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any

member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

28.     Defendant agrees that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

29.     Defendant will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

30.     Defendant waives service of the Final Judgment and agrees that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions. Defendant further agrees to provide counsel for the Commission, within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Final Judgment.

31.     Consistent with 17 C.F.R. 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a

member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

32.    Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings," and "a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations." As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that Defendant does not deny the allegations; and (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

33.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

34.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

35.     Defendant agrees that the Commission may present the Final Judgment to the Court for signature and entry without further notice.

36.    Defendant agrees that this Court shall retain jurisdiction over this matter for the

purpose of enforcing the terms of the Final Judgment.

Dated: _8/30/24_

Prager Metis CPAs, LLC

By: _Lori A. Roth_
Lori A. Roth
Global Managing Partner
14 Penn Plaza, Suite 1800
New York, NY 10122


On _August 30_, 2024, _Lori Roth_____, a person

known to me, personally appeared before me and acknowledged executing the foregoing

Consent with full authority to do so on behalf of Prager Metis CPAs, LLC as its

_Global Managing Partner_.

_Gina Lawson_
Notary Public
Commission expires: _4-21-2025_


Approved as to form:

_Joanna Travalini_

Bruce R. Braun, Esq.
Joanna R. Travalini, Esq.
Sidley Austin LLP
One South Dearborn
Chicago, IL 60603
312 853 7050 (Braun tel.)
312 853 2077 (Travalini tel.)
Attorneys for Defendant

